UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAMIE KOOP,<br><br>    Plaintiff,<br><br>    v.<br><br>AMCO INSURANCE COMPANY,<br><br>    Defendant. | Case No. 16-cv-01963-LB<br><br>**ORDER DENYING THE PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF No. 10 |

## INTRODUCTION

This is a bad-faith insurance claim for alleged wrongful delays in paying-out policy benefits.[1] Jamie Koop alleges that, after she was injured by an underinsured motorist, AMCO wrongfully denied her claims under the parties' insurance contract.[2] Ms. Koop sued in California State court but AMCO removed the case upon learning that Ms. Koop valued the underlying damages at near or exceeding "six figures."[3] Ms. Koop now moves to remand the case for lack of diversity jurisdiction.[4] The court denies the motion.

---

[1] Compl. – ECF No. 1, Ex. A. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations refer to the ECF-generated page numbers at the top of documents.

[2] *See generally id.*

[3] Notice of Removal – ECF No. 1; Martin Decl. – ECF No. 1, Ex. B, ¶ 2.

[4] Motion to Remand – ECF No. 10.

ORDER (No. 16-cv-01963-LB)

## STATEMENT

Ms. Koop had a California car insurance policy with AMCO.[5] The policy covered bodily injuries caused by underinsured motorists up to a maximum of $500,000 per person per accident.[6] This case arises out of AMCO's alleged dilatory and bad-faith processing of Ms. Koop's claim under this coverage.[7]

During the policy period, in July 2011, "an underinsured driver negligently . . . collided into [Ms. Koop's] vehicle[,] . . . caus[ing] bodily injuries[.]"[8] Because of the injuries, Ms. Koop had a claim against the driver exceeding $150,000 and was entitled to benefits under her AMCO policy (a fact of which AMCO was allegedly aware).[9] Ms. Koop accordingly demanded that AMCO compensate her under the underinsured motorist coverage.[10]

Ms. Koop demanded that AMCO pay the policy maximum — $500,000.[11] AMCO rejected her demand, allegedly failing to "fully and thoroughly inquire and investigate" the claim.[12] Ms. Koop also alleges that AMCO utilized "delays and stall tactics" in dealing with her claim, "even though it was aware that the delay in making payment . . . adversely affected her recovery from and her treatment of [her] injuries."[13] Because AMCO rejected her demands and utilized delay tactics, Ms. Koop was "forced to retain the services of an attorney[.]"[14]

After Ms. Koop retained an attorney, and approximately ten months after she demanded the policy limits, AMCO offered to settle her claim for $150,000.[15] Ms. Koop rejected the offer as

---

[5] Compl. ¶ 6.
[6] Id.
[7] See generally id.
[8] Id. ¶ 7.
[9] Id. ¶ 10, 15.
[10] Id. ¶¶ 8–9.
[11] Id. ¶ 16.
[12] Id. ¶ 17.
[13] Id. ¶¶ 19–20.
[14] Id. ¶ 19.
[15] Id. ¶¶ 16, 19.

ORDER (No. 16-cv-01963-LB)        2

1  "[un]reasonable in light of the information that [she] provided to . . . AMCO."[16] AMCO allegedly
2  knew that Ms. Koop 1) was diagnosed with multiple injuries (including nerve trauma and knee,
3  back, and neck pain); 2) had received "almost continuous medical care" since the accident
4  (including pain medication, physical therapy, injections, radiofrequency, and psychological
5  treatment) and would need extensive future treatment; 3) "was taking medication that impacted
6  her ability to safely get pregnant, which was in the family plan"; and 4) missed three weeks of
7  work.[17] After rejecting the $150,000 offer, Ms. Koop again requested payment of the policy
8  maximum, AMCO again refused, and she then demanded arbitration (as required by the policy).[18]

Before arbitration, the parties unsuccessfully attended mediation, during which Ms. Koop
10 incurred approximately $4,000 in costs.[19] The parties arbitrated the claim several months later, and
11 in the end, AMCO paid Ms. Koop a total of $254,079: $150,000 in advance of the mediation and
12 $104,079 after arbitration.[20] Nevertheless, during the claims process, Ms. Koop suffered
13 "emotional and mental distress and anguish, embarrassment, mortification, humiliation, and
14 indignity[.]"[21] She also racked up attorney's fees, litigation costs, and medical expenses as a result
15 of AMCO's "wrongful" and "unreasonable" conduct.[22] Ms. Koop accordingly sued AMCO in
16 California state court, alleging three claims: 1) tortious breach of insurance contract ("bad
17 faith/breach of the implied covenant"); 2) intentional infliction of emotional distress; and 3)
18 negligent infliction of emotional distress.[23]

---

[16] *Id.* ¶ 17.
[17] *Id.* ¶¶ 20–24.
[18] *Id.* ¶¶ 6, 27.
[19] *Id.* ¶ 32.
[20] *Id.* ¶¶ 32–33; Cushing Decl. – ECF No. 11-2, ¶¶ 2–3, Exs. A, B.
[21] Compl. ¶ 34.
[22] *Id.* ¶¶ 28, 34.
[23] *See generally id.*

ORDER (No. 16-cv-01963-LB)        3

AMCO removed the case to this court on the basis of diversity jurisdiction and Ms. Koop now moves to remand back to state court.[24] AMCO opposed the motion and Ms. Koop untimely replied — a tardiness to which AMCO objects.[25]

## ANALYSIS

### 1. The court considers Ms. Koop's late reply brief

Ms. Koop filed her reply brief three days late in violation of Civil Local Rule 7-3 and, as a result, AMCO objects to the court's consideration of her arguments therein.[26] AMCO does not, however, identify how the untimeliness will prejudice it, and the court will accordingly consider the brief and request for judicial notice. *See Morales v. Laborers' Union Local 304*, No. C 11-02278 WHA, 2012 WL 70578, at *6 (N.D. Cal. Jan. 9, 2012) (considering a late brief in part because the defendant did "not claim[] that prejudice would flow from [its] acceptance"). In the future, Ms. Koop must file her papers on time.

### 2. Requests for judicial notice

Both parties make requests for judicial notice under Federal Rule of Evidence 201.[27] "[A] court may judicially notice a fact that is not subject to reasonable disputes because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

First, AMCO asks that the court judicially notice three documents: 1) *Morello v. AMCO Ins. Co.*, No. C 11-6623-SI, 2012 WL 628911 (N.D. Cal. Feb. 27, 2012); 2) Allied Group's Certificate of Standing/Certificate of Existence issued by the Iowa Secretary of State; and 3) the Iowa Secretary of State's Business Entity Summary for Allied Group.[28] The court considers the *Morello*

---

[24] Notice of Removal – ECF No. 1, ¶¶ 5–13. *See generally* Motion.

[25] Opposition – ECF No. 11; Reply – ECF No. 14; Objection – ECF No. 15.

[26] Reply; Objections.

[27] *See* AMCO's Request for Judicial Notice – ECF No. 11-3; Koop's Request for Judicial Notice – ECF No. 14-1.

[28] AMCO's Request for Judicial Notice at 1–2, Exs. A, B. C.

ORDER (No. 16-cv-01963-LB)   4

order without taking judicial notice. *See* Fed. R. Evid. 201 advisory comm. n. (1972); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case.") And the court takes judicial notice of the two Iowa Secretary of State documents as public records. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia Street LLC*, No. 15-cv-02286-JCS, 2015 WL 4932640, at *4 (N.D. Cal. Aug. 18, 2015) (taking judicial notice of state secretaries' websites); *Shurkin v. Golden State Vintners*, No. C 04-3434 MJJ, 2005 WL 1926620, at *6 (N.D. Cal. Aug. 10, 2005) (taking judicial notice of certificate of organization). The court therefore grants AMCO's request.

Second, Ms. Koop requests judicial notice of two website printouts: 1) Allied Group's website listing its office locations, https://www.alliedinsurance.com/allied-insurance-offices.jsp; and 2) an AMCO insurance company profile, https://www.usacoverage.com/insurance-company-profiles/amco-insurance.html.[29] She argues these webpages show AMCO is a subsidiary of Allied Group, a company with a "regional office" in Sacramento, California.[30] Whether or not the court can judicially notice these webpages, the request is denied as irrelevant because (as described below) even if these facts were accepted as true, they do not establish that AMCO is domiciled in California.

### 3. The court has diversity jurisdiction

A state-court defendant, such as AMCO, may remove an action to federal court based on diversity jurisdiction. 28 U.S.C. § 1441(b). For diversity jurisdiction to exist there must be complete diversity amongst opposing parties, and the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Here, Ms. Koop argues that remand is

---

[29] Koop's Request for Judicial Notice at 1–2, Exs. A, B.
[30] *Id.*

ORDER (No. 16-cv-01963-LB)    5

1  necessary because these requirements are not met: she argues the parties are not diverse and the

2  amount in controversy is not satisfied. The court concludes that it has jurisdiction.

### 3.1 The parties are diverse

The first issue is whether AMCO is a citizen of California, rendering the parties non-diverse and the court without jurisdiction. A corporation is "deemed to be a citizen of every State . . . [in] which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). The Supreme Court defined a corporation's "principal place of business" as its "nerve center":

> [A] "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010); *see also Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012). A corporation's "nerve center" is its only "principal place of business": "[f]or example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Hertz*, 559 U.S. at 96 (reasoning that the nerve center test provides a necessary "clearer rule").

In cases involving a subsidiary corporation, courts generally "look[] to the state of incorporation and principal place of business of the subsidiary, and not its parent." *Danjaq, S.A. v. Pathe Comm'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 1992) (internal quotations omitted). An exception lies where "the subsidiary is the alter ego of the parent corporation." *Id.*

Here, the parties are diverse. Ms. Koop is a citizen of California;[31] AMCO is not, and instead is a citizen of Iowa and maybe Ohio.[32] Ms. Koop alleges in her complaint that AMCO is

---

[31] Compl. ¶ 1; Motion at 8.

[32] Shah Decl. – ECF No. 11-1, ¶¶ 3–5.

ORDER (No. 16-cv-01963-LB)    6

domiciled in Iowa.[33] AMCO's Associate Vice President and Assistant Secretary, Parag Shah, also declares: 1) AMCO is incorporated in Iowa, 2) "AMCO's corporate headquarters and principal office" are in Iowa, and 3) AMCO's officers and directors are located in Ohio and Iowa, from where they "coordinate the corporation's activities[.]"[34] By state of incorporation, AMCO is a citizen of Iowa. By nerve center location, AMCO is a citizen of Iowa (again) or Ohio. Recognizing the ambiguity of Mr. Shah's declaration — *i.e.* he declares that AMCO headquarters are in Iowa, but operations are controlled from both Iowa and Ohio — the court finds this sufficient to establish that diversity exists between Ms. Koop (California) and AMCO (Iowa/Ohio). *Accord Morello v. Amco Ins. Co.*, No. C 11-6623 SI, 2012 WL 628911, at *2 (N.D. Cal. Feb. 27, 2012) (finding that AMCO is a citizen of Iowa).

That AMCO's parent company, Allied Group, has a "regional office" in California does not alone change this conclusion — it does not, without more, make AMCO a citizen of California.[35] *See Danjaq*, 979 F.2d at 775. Similarly, that AMCO has business operations in the State — and is subject to personal jurisdiction (as Ms. Koop argues) — does not alter the conclusion.[36] *See Hertz*, 449 U.S. at 96. AMCO has satisfied its burden on this element. On this record, then, the court concludes that the parties are diverse.

**3.2 The amount in controversy is more likely than not greater than $75,000**

The second issue is whether the amount in controversy exceeds the jurisdictional floor — $75,000. *See* 28 U.S.C. § 1332. "The amount in controversy includes claims for general and special damages (excluding costs and interest), attorney[']s fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 WL 4150126, at * (N.D. Cal. Nov. 30, 2009)

---

[33] Compl. ¶ 2.

[34] Shah Decl. ¶¶ 3–5.

[35] Motion at 8.

[36] Motion at 8.

ORDER (No. 16-cv-01963-LB)   7

(quoting *Conrad Assocs v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998)) (internal quotations omitted).

"Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013) (internal quotations and citations omitted). The Ninth Circuit has "not addressed the types of evidence defendants may" use to satisfy this burden. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). It has, however, endorsed the "practice of considering facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotations omitted). The court resolves all ambiguities in favor of remand. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

### 3.2.1 The court considers Ms. Koop's attorney's statements

To prove the amount in controversy is satisfied, AMCO relies on statements of Ms. Koop's attorney, Mr. Krankemann, about the damages at issue.[37] Mr. Krankemann told AMCO's attorney, Sonia Martin, that Ms. Koop "is seeking attorney's fees from the underlying arbitration, which she contends are 'substantial' and in excess of 'six figures' or 'very close to it.'"[38] Mr. Krankemann also said "that Ms. Koop has 'fairly extensive' expert costs and arbitration costs that have not been paid, which are estimated to be in the range of $20,000 to $30,000."[39] He additionally informed Ms. Martin that Ms. Koop "seeks $4,000 to $5,000 in mediation costs from the underlying arbitration."[40]

---

[37] Martin Decl. ¶ 2.
[38] *Id.*
[39] *Id.*
[40] *Id.*

ORDER (No. 16-cv-01963-LB)            8

Ms. Koop objects to the court's consideration of Mr. Krankemann's statements, arguing that they are "impermissible hearsay without any exception."[41] For that, she cites no authority requiring admissible evidence for the purpose of evaluating jurisdiction. The Ninth Circuit has not addressed the type of evidence required on a motion to remand; it has stated only that facts in the removal notice and summary-judgment-type evidence may be considered. *See Matheson*, 319 F.3d at 1090; *see also Johnson v. Sunrise Senior Living Mgmt., Inc.*, No. CV 16-00443-BRO (RAOx), 2016 WL 917888, at *4 (C.D. Cal. Mar. 8, 2016) ("Plaintiff provides the Court with no authority — nor does this Court find any — to equate the 'summary-judgment-*type* evidence' discussed by courts in connection with motions to remand, with evidence actually admissible at trial (or at the summary judgment stage) pursuant to the Federal Rules of Evidence.") (emphasis in original). Even if admissible evidence is required, Mr. Krankemann's comments, made in his capacity as Ms. Koop's attorney and within the scope of that relationship, arguably have operative legal effect (and thus are not hearsay), and also are akin to statements of a party opponent. *See* Fed. R. Evid. 801(d)(2). The court thus considers the statements.

In doing so, the court thinks Mr. Krankemann's statements are probative of the case value and thus the amount in controversy. His statements are similar to settlement demands, which courts have frequently considered to determine the amount in controversy. *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). In *Cohn v. Petsmart*, for example, the plaintiff's settlement demand was sufficient to establish the amount in controversy. 281 F.3d at 839-40. The plaintiff there sent a settlement letter to the defendant demanding $100,000, the asserted value of a subject trademark. *Id.* The plaintiff "made no attempt to disavow his letter or offer contrary evidence," instead maintaining the $100,000 value of the mark. *Id.* at 840. "This evidence [was] sufficient to establish the amount in controversy." *Id.*

Here, Mr. Krankemann asserted that Ms. Koop seeks in excess of (or close to) six figures in attorney's fees, $20,000–$30,000 in expert and arbitration costs, and $4,000–$5,000 in mediation

---

[41] Motion at 9.

ORDER (No. 16-cv-01963-LB)   9

1  costs. Ms. Koop objects to the court considering these statements (see above), but does not
2  disavow the statements (*i.e.* as puffery) or submit contrary evidence discrediting these figures. On
3  this record, then, the court accepts these values as representative of the fees and costs that Ms.
4  Koop seeks and next addresses whether these amounts may appropriately be considered to
5  determine if the amount in controversy is satisfied.

### 3.2.2 Costs and fees of the underlying policy-benefits claims

"The amount in controversy includes . . . attorney's fees[] if authorized by statute or contract." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998)). The Ninth Circuit fashioned this rule reasoning that attorney's fees are not ordinarily included in the amount at controversy because successful parties do not ordinarily collect fees. *Galt G/S*, 142 F.3d at 1155–56 (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). The court, however, recognized two logical exceptions to the rule: "one where the fees are provided for by contract, and two, where a statute mandates or allows the payment of such fees." *Id.* (quoting *Velez*, 599 F.2d at 474).

In addition to statutory- and contract-based fees, courts in this circuit have also considered attorney's fees stemming from disputes to obtain benefits under insurance policies. *See, e.g.*, *James Dickey, Inc. v. Alterra America Insurance Co.*, No. 2:15-cv-00963-ODW-DTB, 2015 WL 4537732, at *3 (C.D. Cal. July 27, 2015); *Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1199–2000 (N.D. Cal. 1998). "California [case-]law permits recovery of attorney[']s fees incurred by the insured in obtaining the benefits under the policy when the insurer's conduct in withholding benefits was tortious." *Conrad*, 994 F. Supp. at 1199 (citing *Brandt v. Superior Court*, 37 Cal. 3d 813, 816–19 (1985)). The California case-law thus distinguishes between fees incurred to collect the policy benefits and fees incurred to sue the insurance company in tort: the former are recoverable but the latter are not. *Brandt*, 37 Cal. 3d at 817–19. Courts in this circuit have accordingly considered such "*Brandt* fees" "in determining whether the amount in controversy exceeds the jurisdictional floor." *Conrad*, 994 F. Supp. at 1199; *James Dickey*, 2015 WL 4537732, at *3.

1    So too may the court here. Ms. Koop seeks attorney's fees arising from her efforts to collect
2    the benefits of her insurance policy with AMCO (*i.e.* "*Brandt* fees").[42] Attorney Krankemann
3    described these amounts as "'substantial' and in excess of 'six figures' or 'very close to it.'"[43]
4    These fees — a minimum "close to" $100,000 — and the additional underlying costs to obtain the
5    policy benefits — described as $24,000–$35,000 — are substantial in establishing the amount in
6    controversy.

### 3.2.3 Emotional distress and punitive damages

"Courts may consider emotional distress damages when analyzing the amount in controversy." *Abikhalil v. American Medical Response Ambulance Serv., Inc.*, No. CV 15-9358 PSG (PJWx), 2016 WL 429764, at *2 (C.D. Cal. Feb. 2, 2016). Courts may also consider punitive damages when they are recoverable under applicable law. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). In California, punitive damages are available in bad-faith insurance claims. *See* Cal. Civ. Code § 3294; *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995). "When assessing the likely amount of punitive damages for jurisdictional purposes, courts may look to verdicts in analogous cases as a reasonable approximation[.]" *James Dickey*, 2015 WL 4537732 at *3. "The fact that the cited cases involve distinguishable facts is not dispositive." *Simmons*, 209 F. Supp. 2d at 1033.

Here, Ms. Koop seeks both emotional distress and punitive damages.[44] AMCO argues — by way of analogy to verdicts in other cases — that these potential damages help bring the amount in controversy above $75,000.[45] Many of these cases are, however, largely distinguishable and present factual scenarios potentially warranting larger emotional distress and punitive damages awards than the case here. For instance, in *Clayton v. United Services Automobile Association*, the jury awarded $400,000 in emotional distress damages and $3.9 million in punitive damages where

---

[42] Compl. ¶¶ 19, 28; p. 17.

[43] Martin Decl. ¶ 2.

[44] Compl. ¶¶ 34, 36–45, p. 17.

[45] Opposition at 6–7.

ORDER (No. 16-cv-01963-LB)          11

the defendant-insurer attempted to "settle for a fraction of the policy limits [the plaintiff's] underinsured motorist claim for the death of his 15-year-old[] only child[.]" 54 Cal. App. 4th 1158, 1160 (1997). Similarly, in *Major v. Western Home Insurance Company*, the jury awarded $450,000 in emotional distress damages and $646,471.53 in punitive damages in an "insurance bad faith action arising out of the destruction of [the plaintiffs'] home[.]" 169 Cal. App. 4th 1197, 1203, 1207 (2009); *see also Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994) (jury awarded $500,000 in emotional distress damages and $11,250,000 in punitive damages related to insurer's refusal to pay for home defects). Additionally, in *James Dickey, Inc. v. Alterra America Insurance Company*, the court concluded that an estimated "conservative 2-to-1 ratio" of punitive damages to compensatory damages for a bad-faith insurance claim regarding stolen tools would meet the jurisdictional threshold. 2015 WL 4537732 at *3. Finally, AMCO cites several class-action cases to bolster its valuation of emotional distress and punitive damages. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (1995); *Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH, 2015 WL 4931756 (N.D. Cal. Aug. 18, 2015).

Here, unlike the cases cited by AMCO, Ms. Koop did not lose a child, a family home, or monetarily-quantifiable personal property, and she did not bring this as a class action. Yet Ms. Koop does allege certain facts that make emotional distress and punitive damages likely as in the bad-faith cases above. For example, she alleges that AMCO's dilatory conduct "adversely affected her recovery from and her treatment of the bodily injuries" suffered.[46] She also asserts that she suffered emotional distress, was treated for depression, and incurred medical expenses.[47] Ms. Koop moreover generally alleges that AMCO fraudulently induced her to buy the policy, had a practice delaying or contesting similar claims, and delayed her claim — despite knowledge that she was entitled to receive policy benefits — "for the sole purpose of compelling [her] to accept a lesser sum in settlement[.]"[48] And she asserts that AMCO engaged in this conduct despite its

---

[46] Compl. ¶ 20.

[47] *Id.* ¶¶ 22, 34.

[48] *Id.* ¶¶ 11–16, 25.

knowledge of her conditions — *i.e.* that she suffered multiple injuries, was undergoing several treatments, had missed work, and was on medication affecting her ability to become pregnant.[49]

These facts are distinguishable from the cases that AMCO cites but factual differences are not necessarily dispositive. *See Simmons*, 209 F. Supp. 2d at 1033–34. Although those cases may be more egregious or more definitive in value, the court thinks that AMCO sufficiently shows that some award of emotional distress and punitive damages should be considered in the amount in controversy. *Id.*

\* \* \*

Viewing in combination Mr. Krankemann's statements and the likelihood of emotional distress and punitive damages, AMCO has shown by a preponderance of the evidence that the amount in controversy is more likely than not satisfied. By uncontroverted declaration, it has shown that Ms. Koop values the underlying fees near $100,000 and additional underlying costs of $24,000–$35,000. AMCO has also shown that emotional distress and punitive damages are available and likely in insurance bad-faith claims such as this one. It has consequently satisfied its burden.

## CONCLUSION

The court denies Ms. Koop's motion to remand the case to state court.

**IT IS SO ORDERED.**

Dated: June 27, 2016

_____
LAUREL BEELER
United States Magistrate Judge

---

[49] *Id.* ¶¶ 20–24.